IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TODD LABELL,<br><br>Defendant._____/ | No. CR 09-01210 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION REGARDING FORM 12 AND CONDITIONS OF SUPERVISED RELEASE** |

Todd Labell asks this Court to find that he has not violated a condition of his supervised release as alleged in a "Form 12" petition (dkt. 12) filed by the U.S. Probation Office. Labell is required to participate in a sex offender treatment program under the terms of his supervised release, and that program includes periodic polygraph tests. The alleged violation concerns Labell's invocation of the Fifth Amendment privilege against self-incrimination in response to two questions posed during one of the polygraph tests. Labell also seeks an order stating that he need not submit to any further polygraph testing as part of his sex offender treatment program, and an order requiring the return of a computer confiscated by the Probation Office about a year and a half ago. See dkt. 20.

## I. BACKGROUND

Labell was convicted by guilty plea in the U.S. District Court for the District of Utah of a single count of Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18

U.S.C. § 2423(b). See Judgment, Ex. A to Linker Decl. (dkt. 21-1).[1] He was sentenced in February 2006 to 51 months' imprisonment and five years of supervised release. Id. His supervised release term including the following special conditions:

> (1) The defendant shall not possess or use a computer with access to any 'on-line computer service' without the prior written approval of the court. . . .
> . . .
> (3) The defendant shall participate in a mental health and/or sex offender treatment program as directed by the USPO.
> . . .
> (4) The defendant is restricted from visitation with individuals who are under 18 years of age without adult supervision as approved by the USPO.
> . . .
> (6) The defendant shall not view or otherwise access pornography in any format.
> . . .

Id.

The case was transferred to this Court in December 2009. See Ex. B to Linker Decl. This Court then granted the Probation Office's request to amend Labell's Special Condition of Supervised Release Number One; the gist of the condition was the same, except the new wording permitted the Probation Office, rather than the Court, to approve the possession or use of a computer linked to the internet. See Ex. C to Linker Decl.

About ten months later, in October 2010, the Probation Office filed a Form 12 alleging that Labell had been using the internet to access adult pornography. See Ex. D to Linker Decl. Labell admitted the violations. See dkt. 7. The Probation Office and Labell agreed that his supervised release conditions should be modified to permit Labell to access non-internet pornography without the approval of the Probation Office, while leaving in place a restriction on internet pornography. See Ex. E to Linker Decl. at 2 ("Special Condition Number Six is amended to state that The defendant shall not use a computer or other device with internet access to view, download, or otherwise access pornography without first seeking approval from Probation.").

---

[1] The government had also charged Labell with enticement of a minor to engage in illicit sexual activity in violation of 18 U.S.C. 2422(b). See Indictment, dkt. 1, No. 05-CR-456-DKW, (D. Utah filed June 29, 2005). That count was dismissed after Labell pled guilty to the travel count under § 2423(b). See Judgment, Ex. A to Linker Decl. (dkt. 21-1).

2

Roughly eight months later, in July 2011, the Court took judicial notice of a new Form 12 from the Probation Office stating that there was probable cause to believe that Labell had again violated his release conditions by accessing pornography over the internet–this time with a computer he had not first received authorization to use. See Ex. F. to Linker Decl. The Probation Office confiscated Labell's computer for 30 days and told him that future violations would result in loss of computer access for the remainder of his supervised release term. Id.

Four months later, in November 2011, the Probation Office notified this Court, via ex parte letter, that a Probation Officer reviewing computer monitoring records reported that Labell had been spending "many hours a day viewing pornographic images on ebay and purchasing pornographic DVDs" while at work. See Ex. G to Linker Decl. The Probation Office requested, and this Court granted, permission to recover Labell's personal computer from his place of employment for a forensic analysis, and to notify the employer that Labell was on supervised release. The computer has remained in the Probation Office's custody ever since.

Labell has been participating in a sex offender treatment program in this district as required by the terms of his supervised release. The program includes regular polygraph examinations, which the Probation Office says are standard for this type of program and "are used to provide the sex offender with an incentive to remain truthful with the treatment provider and the U.S. Probation Officer." See Ex. 1 to Opp'n (dkt. 23-1). Labell was scheduled to take a polygraph test as part of that program on January 8, 2013.

About a week before that test, defense counsel wrote a letter to Labell's Probation Officer stating that counsel had reviewed the pre-polygraph questionnaire and advised Labell "not to answer several of the question that he has a Fifth Amendment right to refuse to answer." See Ex. H to Linker Decl. Counsel e-mailed and had a hard copy of the letter delivered to the Probation Officer on January 2, 2013. Linker Decl. ¶ 9. The Probation Officer did not respond, and the polygraph test occurred on January 8 as scheduled.

The test consisted of three questions, two of which Labell declined to answer after invoking the Fifth Amendment: (1) "since your last test have you used any unauthorized computer to access the Internet," and (2) "since your last test have you viewed any pornography online." The third question asked whether Labell had any unsupervised contact with minors, and Labell's answer of "no" was deemed truthful by the polygraph operator.

Two months after the test, the Probation Office filed a Form 12 alleging that Labell's refusal to answer the two questions on Fifth Amendment grounds was a violation of his supervised release condition requiring that he participate in a sex offender treatment program as directed by Probation. See Ex. I to Linker Decl. In response, Labell filed the instant motion. See dkt. 20. The U.S. Attorney's Office has adopted the Probation Office's recommendation that this Court find that Labell violated his supervised release condition. See dkt. 23.

## II. DISCUSSION

### A. Labell's Invocation of the Fifth Amendment

A defendant may be ordered to participate in polygraph tests as a condition of his supervised release, but he retains his Fifth Amendment rights during the tests. United States v. Stoterau, 524 F.3d 988, 1003-04 (9th Cir. 2008). Accordingly, "if a question is asked during the polygraph examination which calls for an answer that would incriminate the defendant in a future criminal proceeding," the defendant may refuse to answer on Fifth Amendment grounds. Id. at 1004. The Fifth Amendment does not, however, protect answers that could result only in the revocation of supervised release status; the danger posed must be that of future criminal prosecution. See Minnesota v. Murphy, 465 U.S. 420, 435 & n.7 (1984).

The government can prevent a defendant from invoking the Fifth Amendment by affording the polygraph test answers use and derivative use immunity. See United States v. Antelope, 395 F.3d 1128, 1141 & n.5 (9th Cir. 2005). The government chose not to do that here. See dkts. 24, 25, 27.

4

The only disputed issue is whether Labell risked incriminating himself by answering the two questions. In Hoffman v. United States, the Supreme Court explained that the privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." 341 U.S. 479, 486 (1951). And, "[t]o sustain the privilege it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Id. at 486-87. The "trial judge in appraising the claim must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." Id. at 487.

The Ninth Circuit has phrased the inquiry in terms of whether there was a "real and appreciable danger of self-incrimination," which means a threat that is "reasonably particular and apparent." Antelope, 395 F.3d at 1128. On the other hand, threats of prosecution that are "remote," "unlikely," "speculative," "highly unlikely," or "[i]maginary and insubstantial" do not receive Fifth Amendment protection. Id.; see also Murphy, 465 U.S. at 435 n.7 (requiring a "realistic threat of incrimination in a separate criminal proceeding").

Here, the government argues that the questions at issue concerned non-criminal conduct and so even if Labell had answered "yes" to both–i.e., admitted using an unauthorized computer and looking at pornography online–he faced no realistic threat of criminal prosecution. Labell contends that answering those questions could furnish important links in a chain of evidence supporting a prosecution for, say, possession of child pornography, which would only require one additional question about the age of the people portrayed in the pornography. The government responds that "the Fifth Amendment does not permit Labell to stay silent in the face of non-incriminating questions merely because he can imagine an incriminating follow-up." Opp'n at 7.

Actually, that is exactly what the Fifth Amendment does, so long as the hypothetical follow-up question and attendant risk of prosecution is not "remote, unlikely, or speculative."

5

Antelope, 395 F.3d 1128. Here, Labell is on supervised release in a case where he was initially indicted for enticing a minor to engage in illicit sexual activity, his release terms "restrict[ him] from visitation with individuals who are under 18 years of age without adult supervision as approved by the USPO," and one of only three questions on the polygraph test was about Labell's involvement with minors. The government's concern that Labell has a sexual interest in minors is beyond dispute, and the possibility that it would investigate him for related criminal conduct is the opposite of "speculative" and "insubstantial." Indeed, the government's insistence that Labell faces no realistic prospect of future criminal prosecution loses some force in the context of its refusal to immunize his answers.

Of course, the government has a legitimate interest in protecting its ability to investigate and prosecute crimes, as well as in pursuing effective methods for rehabilitating convicted sex offenders through therapy and treatment. Those are two of many relevant considerations that must be weighed and balanced by the prosecutor's office in deciding whether to immunize answers to polygraph exams administered in connection with a sex offender treatment program.

Where, as here, the government elects not to provide immunity, and the Court concludes that the individual on supervised release properly invoked the Fifth Amendment privilege, the valid exercise of that constitutional right cannot be the basis for a finding that he failed to participate in a sex offender treatment program. See Murphy, 465 U.S. at 436. Accordingly, the Court GRANTS Labell's motion in part and finds that he did not violate Special Condition Number Three as alleged in the March 13, 2013 Form 12.

**B. Future Polygraph Testing**

Labell represents that he "welcomes treatment," but asks that this Court order that he not be required to participate in further polygraph examinations because in his view they are unreliable, unnecessary, and expensive. Mot. at 7-8. The Probation Office submitted a letter stating that polygraph testing is a standard part of its "containment approach" to sex-offender treatment. See dkt. 23-1. The tests are "designed to assist in the treatment, including clinical intervention, and supervision of the offender by detecting deception or verifying the truth of

their statements related to compliance with the conditions of supervision," and "provid[ing] the sex offender with an incentive to remain truthful with the treatment provider and the U.S. Probation Officer." Id. The government also included with its opposition brief a letter from a licensed social worker, who appears to be a private sex offender treatment provider, who echoes the sentiment that polygraph tests are a useful tool in sex offender treatment. See dkt. 23-2 (Letter from Program Director of "HOPE" Program). The social worker's letter refers to a limited set of data purportedly supporting that conclusion. Id.

Conditions of supervised release must be reasonably related to (1) the nature and circumstance of the offense and the history and characteristics of the defendant, (2) the need to afford adequate deterrence to criminal conduct, (3) the need to protect the public from further crimes, and (4) the need to provide the defendant with necessary correctional treatment in the most effective manner. See 18 U.S.C. 3583(d)(1). The conditions must also be no greater a deprivation of liberty than necessary and must be consistent with the pertinent policy statements in the Sentencing Guidelines. Id. § 3583(d)(2)-(3).

The Probation Office has represented that it finds the polygraph tests to be a useful and effective component of its sex offender treatment program, and according to the letter submitted to this Court, its position is informed by some objective data. See dkt. 23-2. Labell has provided no conflicting data to support his claim that the tests have no treatment value. While a focus on cost-effective treatment is surely important in light of recent federal budget constraints, Labell offers no basis for this Court to second guess the Probation Office's assessment that the treatment value of the tests justifies their costs. Cf. United States v. Rearden, 349 F.3d 608, 619-20 (9th Cir. 2003).

Accordingly, the Court DENIES Labell's Motion in part and declines to order that he not be required to participate in further polygraph testing. Labell nonetheless retains his Fifth Amendment privilege against self incrimination as discussed above in Part II.A.

### C. Return of Labell's Computer

Labell requests that the Court order the return of his computer, which the Probation Office has kept for approximately 19 months since seizing it from his workplace. Labell's

Probation Officer explained to this Court via letter dated July 16, 2013, which was served on defense counsel, that in light of the history recounted above of Labell's problems using unauthorized computers and accessing internet pornography in violation of his supervised release conditions, she concluded that revoking his computer privileges (with an exception for the use of a computer at a career development center to conduct an employment search) was the best way to support Labell in his efforts to receive effective treatment and complete supervised release without further violations. The Probation Officer further represented that Labell's therapist at his sex offender treatment program agreed that revocation of computer privileges was appropriate.

Labell responds that Probation overstates the frequency and severity of Labell's prior issues with unauthorized computers and internet pornography; that computer monitoring would address the Probation Officer's concerns; and that Labell's desire to view "lawful adult pornography" is not inherently problematic. Reply at 3. In fact, Labell's supervised release conditions do make his demonstrated inability to refrain from internet pornography problematic, and experience has shown that computer monitoring software was not effective in preventing him from violating his release conditions. Accordingly, this Court DENIES Labell's motion in part and declines to order that his computer be returned to him at this time.

### III.  CONCLUSION

For the foregoing reasons, Labell's motion is GRANTED IN PART as to the finding that he did not violate Special Condition Number Three as alleged in the March 13, 2013 Form 12, and DENIED IN PART as to his requests regarding future polygraph testing and the return of his computer.

**IT IS SO ORDERED.**

Dated: July 29, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE